Good morning. May it please the Court, I'm Doug Myers. I'm appearing on behalf of the petitioner, Mr. Camino. I would like to reserve a couple of minutes, two minutes for rebuttal. Mr. Camino's case is here on a Siebert claim. The state court denied the claim, finding that there was no deliberate two-step technique that was discussed in the Siebert case. The — our position is that that determination was unreasonable and that Mr. Camino is entitled to habeas relief. The state decision was principally based on — It's essentially a — I mean, it's basically a historical fact, right? This is not a — either they did have a practice of doing this intentionally of having two-step process or not. Well, I don't think that it — I don't think Siebert requires that there be a policy within the police department. That is the facts of Siebert. Well, no, maybe we can argue — we can argue what Siebert means. But I mean, the finding of the state court is a pure historical finding of facts. It is a factual finding. I would agree with that. Sotomayor, you made two findings. There was no intent to use a two-step procedure. Correct. And there was not a practice of using a two-step procedure. Correct. Are you disputing either of those historical facts? That those are the findings that were made? We're not disputing that those are the findings. No, no. I'm sorry.  Yes. We're disputing the conclusion. Both of them? Not that — I don't have any evidence that there was a practice within the police department to engage in a Siebert practice. So you're not disputing the second fact, the second finding? Correct. The one — so you are saying, so we have to accept that. You don't even dispute that there was not a practice. I agree there's no evidence in that record to show that there was not. So in the absence of a practice, do you have a Siebert claim? Well, I think you do. So I think the case Siebert came before the Supreme Court where a police officer said our department has a practice. But I think you could have an individual officer who violates Siebert even though the department doesn't have a practice of doing so. I have to say I agree with you in the sense that I don't think a practice is essential to satisfy Justice Kennedy's Siebert standard that it be deliberate. But what evidence do you have absent — and we just don't have the practice here. So you've got to say that what the officers did in this case was a deliberate two-step violation. So I'm having trouble seeing how the California State Court determination that there was not a deliberate evasion is unreasonable. Help me out if you can. Okay, so then I think we get to, you know, what are the factors to consider in deciding whether there's a deliberate process. And what happened here and so on. Right. And so in Siebert, Justice Kennedy didn't really have to analyze how to evaluate deliberateness because the police officer said it was deliberate. We don't really have a standard, do we? Well, in Williams, this court set up a — had a discussion about how to evaluate a Siebert claim when you didn't have an officer admitting that it was a deliberate two-step procedure. And no officer would ever admit that other than in Siebert. Well, and the court said that in the Williams case, that how — what officer would, especially after Siebert, come in and say, we have a practice to evade Miranda and do a first interview without Miranda and then a second one with it. So the Williams court discussed objective and subjective factors, and they listed four objective factors. Clearly, the officer said, I did not do this deliberately. So we have that. The objective factors, as the Court of Appeal and the U.S. District — well, the magistrate that did the findings and recommendations said, most, if not all, of those factors weigh in favor of a finding of deliberateness. Those factors under Williams are the timing of the interrogations. So these were very close together. There was only a 20- to 30-minute gap between the two. The setting and the completeness of the unwarned statement. So if you consider that, the setting is in a custodial environment. Mr. Camino had been in custody for six hours. He'd been arrested at gunpoint, detained at early morning hours under rather suspicious circumstances. His hands were bagged to preserve GSR evidence, and he was transported handcuffed to a police station and held in a jail cell at the police department for six hours prior to the unwarned interrogation. So this is all clearly custodial. The government conceded it was custodial, and the first interrogation could not be used. The completeness of the unwarned statement. This was a, as characterized by the Court of Appeal and in the lower court here, was a fully complete confession. As Mr. Camino described what happened in the early morning hours related to his associate gang member's murder, he explained the whole situation, how they'd come together, how he knew the individual had a gun, how they were involved in an earlier shooting, where they were fired at by a particular gang, and how they formulated a plan to retaliate against that gang and to return to that gang's territory and to carry out that plan, and that's when his gang associate was killed. So that was a full, complete, detailed confession that allowed for a provocative act murder theory to be presented to the jury and why Mr. Camino was found guilty. All of that occurred in the unwarned interrogation. The Williams Court also said to look at the continuity of the police. Are we looking at a different set of police officers doing the unwarned statement versus the warned? And in this situation, it's the same two interrogating officers. I know that he did have the benefit of the gang expert police officer come in, who he requested come in to talk to him before he gave his statement. The second statement. That Mr. Camino requested that? Yeah. I don't believe so. The evidence below was that two detectives contacted Mr. Camino about six hours after he'd been arrested in an interview room at the Santa Ana Police Department. He was placed in that room. Those two officers questioned him without giving him his Miranda rights on the theory that they weren't sure whether he was a suspect, a victim, or a witness. Despite the fact that the treatment of him, in my view, was clearly we see you as a suspect. It may not be crystal clear what your role was and whether you're going to be charged or whether you're going to be a defendant. Mere witnesses are not ordinarily treated the way he was treated. I'll give you that. And the way he was interrogated as well. And as the interrogation progressed, he began to implicate himself. I mean, this was an officer, a veteran of the police department, who clearly understood Miranda, clearly understood Mr. Camino was in custody, and intended to ask him incriminating questions, and did, and got inculpatory statements, and still did not advise him of his Miranda rights until he had the whole story out. Then he left. Then they returned about 30 minutes later and said, We want to go over it again. And then they read the Miranda rights, and they went over it again, and there were no curative measures that Justice Kennedy talked about. I see that I'm out of time. Well, actually, we've got about two minutes left, but do you want to save that for rebuttal?  Okay. Thank you. We'll hear from the State. Good morning, Your Honor. May it please the Court. I am Kevin Vienna, Deputy Attorney General. Back some more, huh? We'll see if I hold up better this time. The opposing counsel has, both in his brief and in his argument, has identified those objective factors, I think under the Williams case, or based on the approach this Court has directed in Williams, to help determine whether there was a deliberate two-step practice. But even Williams says that the Court should also consider subjective evidence that may be available. And in this case, there was subjective evidence available. Twice, two different trial court judges observed Corporal Rondeau explain that there was no such practice and he employed no such practice to undermine the Miranda rights of Mr. Camino, and both of those trial judges, one before the preliminary examination and one before trial, believed that he was credible. Now, is that disputable? Always. There is contradictory evidence in the objective factors. But the determination of credibility is, as I believe Judge Kaczynski indicated at the beginning, a determination of, essentially a determination of fact. The State Court of Appeal looked very carefully at this and acknowledged that the objective factors, that the objective factors supported Mr. Camino's argument, but said that the subjective factor made reasonable the determination of the State trial court judge. I'm having trouble with the definition of deliberate as intended by Justice Kennedy. Obviously, what the interrogating officers did was deliberate in the sense that they questioned him, they got a confession, they took about a half-hour break, they changed rooms, they started interrogating him again, and before they do that, they give him Miranda, and then he confesses. Again, all of those things were deliberate. Now, what more do we mean by, does Justice Kennedy mean by deliberate in order for this to be a violation? That's what's unclear to me, because any officer, knowing that that's going to happen, knows that they've increased the likelihood of getting a confession post-Miranda. Now, what does deliberate mean in this circumstance? That they thought that the first interrogation could be wiped off the books and was irrelevant? That they didn't need to have done it? I mean, I'm asking you a question about what Justice Kennedy meant, and I realize that's difficult for both of us, because in this circumstance, deliberate is the word, but I'm having trouble understanding what it means. I believe the analogy is mens rea in a criminal offense, and I think Justice Kennedy made it a specific intent crime. That is, the police must be engaged in a deliberate practice to undermine, to engage in the two-step practice to undermine the effectiveness of the Miranda warning. Oh, but if that's the step, they clearly undermine the effectiveness of the warning. There's no question about what that's done. That's the natural and probable consequence of the sequence. And they did the sequence. So if that's deliberate, they're in trouble. But I'm not sure that's what Kennedy meant. No, I think when I said specific intent, that is, the officer must have engaged in that practice with the specific intent of accomplishing that. And I say that because that's what the officers admitted to in Siebert, and Justice Kennedy, whose sole opinion seems to establish the rule, rejected the more broad approach taken by Justice Souter and the three justices who joined him. So it was just an accident. If it wasn't deliberate, it was just an accident. What did he think he was doing? The one objective factor that I think. He was just sort of chatting. They were sort of passing the weather, talking about football. By the way, did you commit this crime? He was at the beginning trying to figure out what happened. I mean, I think that's quite clear. That is, Camino was taken in because he was present. So he's taken in, in custody with his hands bagged, right? And the policeman starts talking to him, trying to figure out what happened. I mean, if you just took a snapshot of that and said what's going on here, I think people would say he's interrogating him. He certainly was questioning him, and the State didn't disagree that Miranda should have applied because he was objectively in custody at the time. I think whether he was engaged in seeking to elicit inculpatory statements is unclear, and certainly it seems at the beginning that was not his goal. His goal was to find out what happened. Why was Mr. Palacios lying dead in the driveway adjacent to the street at that location? So who did it and why did it happen? There's no doubt that Camino was not free to leave. I think that's correct. He was detained. He was handcuffed. He wasn't invited to the police station. He was taken to the police station. And that does seem to have been a policy on the part of the police department that is in what appear to be gang crimes. They know that it will be difficult to sort out what happened in large part because people who are merely witnesses are reluctant to be involved. When is Miranda triggered? I thought it was triggered by a custodial interrogation. Yes, that's what I think. And there was no dispute about custody. I think there is at least some argument about when it became interrogation, that is when the focus of the questioning became did you commit a crime and are we seeking to solve that? But they knew he was there. Yes, then that's not a crime. Right. But why did they take him in based on that he was there if it's not a crime? They said the answer to that question, the only answer to the question that I have, is that it was the practice in gang cases because of the difficulty of sorting out what happened because witnesses are afraid to speak and are in particular perhaps afraid to speak to the police on the street where they can be observed by other people. I want to ask you something else. One of the bases for the court of appeals decision was that the provocative acts theory of liability is, I guess it's not a classic theory of liability. But how long has that law been on the books in California and weren't these? Well, certainly at this time that was the law at the time. It's definitely a statute under which someone can be held liable. And these officers wouldn't have known about it? It's a theory. But the jury instruction on provocative act murder I think is three pages long. I would say it's not obvious. So is it plausible that Officer Rondeau didn't know that he could be held on a provocative act theory? I think it's plausible that he could not know that for a while. But eventually I think it's clear that at about the same time it was apparent to Corporal Rondeau that Mr. Camino was an aider and a better in an attempted murder by Palacios. That is, he knew Palacios had fired once, and he came to learn that Palacios shortly thereafter went to another location and fired his gun a couple more times. So by that point there was clearly reason to suspect that he was criminally liable for some crime. So there wasn't a policy, a practice and a policy of the two-step inquiry, but there was a practice and a policy of bringing everyone in and putting them in custody? Yes, in gang cases. Detaining them and taking them to the police department for questioning. To find out what happened. Yes, Your Honor. Isn't that interrogation? Well, I don't think it's interrogation. Let's suppose that you have someone that you completely believe is merely a witness to what occurred. It's simply a witness to what occurred. And there's no reason to suspect criminal involvement. That is, you have a young mother and her child. Would you transport her in handcuffs? I might. And the reason I say I might is because I don't know that this was the case here, but I know that the police are concerned about witnesses appearing to be cooperative with the police in gang cases. Gang intimidation is typical following gang crimes. I'm still struggling with this notion of what deliberate means in this context. Let's say that you are in the Attorney General's office and you're giving guidance generally to police officers and detectives in California as to what they ought to do. And the question comes up, should police officers and detectives engage in a two-step process, first doing a custodial investigation without a Miranda warning, and then take a break after they've gotten the confession, give the warning, and repeat the question saying, I'd just kind of like to clear some things up, as was done here. Would your office recommend against it? Would it take no position but say, you know, this is a fairly effective technique? What would your office say? Well, I believe the office would say you cannot do that. Cannot do what? You may not deliberately. No, no, no. I don't. I want the word deliberate out of there. I'm just saying, are you going to tell them they should do this two-step process? They can't do this two-step process? I mean, what are you going to tell them and why? Well, what I would tell them to begin with is you must comply with Miranda. I know. I got that, too. But my question is different. Are you going to tell them you cannot do a two-step process such as I have just described? You mean, are we going to tell them that they can never warn and then question later? Well, I'll actually do it more specifically. Let's take the facts of this case. Putting to one side the motivation of Officer Rondo, will you instruct the interrogating police officers not to do what happened here? I would instruct the officers to, just as I think the trial court and the prosecutor conceded, once the officer became aware that Mr. Camino was not just a witness but was possibly a criminal, that they should have, and the court of appeals said they should have stopped immediately and warned him. Yeah, so that's not what happened here. Yes, that's correct, Your Honor. So you would, in your advice to your interrogating officers, you would advise them not to do this? Not to do what happened here? Certainly. And why would you advise them not to do what happened here? Well, the mistake happened earlier. The constable blundered before the warning and subsequent interrogation. No, no, I asked a question. I understand you're trying to answer it, but it's more specific. What happened here that was wrong? And you're giving advice you shouldn't have done it. So what did they do that they shouldn't have done? So let's say, if I could add to the hypothetical, that is the officer learns that Mr. Camino is a suspect in a crime, and he has asked some additional questions that elicit inculpatory information, and he says to himself, now, I believe I've made a, he realizes that he's made a mistake, and he calls me on the Attorney General hotline and says, what should I do about that? My answer is that you should tell him that the subsequent Miranda warning should include that what you have said before cannot be used against you either. And you would say that just to protect Miranda. Do you think the law requires the advice you just gave? It requires. That's a function of the question of whether there's a deliberate two-step. I'm still struggling with this. To put it differently, you think the absence of such a warning renders the conduct, per se, deliberate? No. If the officer doesn't say, by the way, you know, all the stuff you told me is out the window. I don't think it does render it deliberate. Isn't he presumed to know, Siebert? Presumed to know. He is required to comply with the law. The law of confessions and the law of Fourth Amendment is extraordinarily complex, and I think I demonstrate that no one knows all of it. Actually, Miranda, they issued that to make it easy. And I think there can be a healthy discussion about whether it did or did not. But that's where we are. Thank you. All right. Thank you, Your Honor. You have about two minutes. We'll make it even two minutes. I'm prepared to submit unless the Court has any questions. Okay.
judges: Kozinski, Wardlaw, Fletcher